UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: RAFID KAKOS,                                    Bankr. No. 13-57575

                                                       Hon. Phillip J. Shefferly

        Debtor.                                        Chapter 7

_____/

RAFID KAKOS,

        Appellant,                                     Civil Action No. 14-CV-13736

vs.                                                    HON. BERNARD A. FRIEDMAN

MICHAEL STEVENSON, Trustee for
the Bankruptcy Estate of Rafid Kakos,

        Appellee.

_____/

## OPINION

        This matter is presently before the Court on an appeal by the debtor, Rafid Kakos

("debtor" or "Kakos"), from a order of the Bankruptcy Court denying his motions to (1) compel the

trustee to abandon certain real property and (2) allow administrative expense for redemption of

property.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158.  The Court reviews a

Bankruptcy Court's factual findings for clear error; its conclusions of law are reviewed *de novo*.

*See In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006); *In re Musilli*, 398 B.R. 447, 452-53 (E.D. Mich.

2008).  As the issues have been fully briefed, the Court shall dispense with oral argument and decide

the appeal without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).

        The facts in this matter are not in dispute.  At the hearing on the motions, the

Bankruptcy Judge summarized the facts as follows:

Mr. Kakos filed this Chapter 13 case originally on September 30, 2013, and he later converted the case to Chapter 7 voluntarily on March 4, 2014. Now, at the time that he filed the Chapter 13 case, his residence was in foreclosure. The residence is a property located on Lamarra, and . . . according to the record made in this case, there was a first mortgage on the property held by Ocwen . . . in the amount of just under $65,000. Now, what his schedules that were amended don't show is that there was actually a second mortgage on the property that was held by Fifth Third Bank that at the time that the bankruptcy case was filed was in the following posture. A foreclosure sale had taken place and we were within the redemption period. So on the day that the bankruptcy case was filed, Mr. Kakos owned the property subject to a first mortgage in favor of Ocwen for roughly $65,000, and he had the right to redeem from a foreclosure sale conducted by Fifth Third Bank an amount approximating $70,000 . . . .

In between the time that he filed the case on September 20, 2013, and converted the case on March 4, 2014, Mr. Kakos filed two different plans in the bankruptcy case. One of them was filed on . . . October 31, 2013. . . . A second one was filed . . . on January 3, 2014. . . . Neither of these plans dealt with a fact that had occurred after the petition was filed and before the . . . conversion of the case, and that fact is that an individual by the name of Zora had actually paid the redemption amount to redeem from the second mortgage foreclosure sale. That payment occurred on November 25, 2013.

At the 341 meeting after the case was converted to Chapter 7, the debtor testified that Mr. Zora had made a gift in the form of that payment. So at the time that the Chapter 7 trustee took over the administration of this case post-conversion on March 4, 2014, the value of Mr. Kakos' interest in the property was considerably greater than it was on the day he filed his Chapter 13 bankruptcy petition on September 20, 2013. Now, on March 4, 2014, the interest that Mr. Kakos had in the property was still subject to a first mortgage lien in favor of Ocwen but was no longer subject to an incumbrance in the form of a foreclosure sale with a redemption price that had to be paid to Fifth Third Bank.

Now, when the payment was made to redeem on November 25, 2013, Mr. Kakos did not seek permission of the Bankruptcy Court in any way nor did he inform the Bankruptcy Court of that payment nor did Mr. Zora either by filing a pleading in the case or filing a claim or otherwise.

R. 71-74. The amount of the November 25, 2013, payment was $71,360.99. R. 193).

In his motion to compel the trustee to abandon certain property, debtor argued that "[d]ue to the conversion of the Chapter 13 case, the Trustee is not entitled to any equity that resulted from the Debtor's redemption and the Trustee may not now sell the property to claim that equity that was created by the Debtor's plan payments."  Debtor's Mot. ¶ 11.  Debtor also noted that "the Trustee asserts that there is a pending offer for the sale of the property in the amount of $145,000.00."  *Id.* ¶ 12.

Thus, the issue raised by the motion to abandon property is whether the November 25, 2013, payment of $71,360.99 to redeem the Lamarra property, following the foreclosure of the second mortgage, belongs to the bankruptcy estate or whether it is somehow exempted and must be returned to the debtor.

The Bankruptcy Court correctly decided the issue against the debtor.  Abandonment of property is governed by 11 U.S.C. § 554(b), which permits the Bankruptcy Court to "order the trustee to abandon any property of the estate that is . . . of inconsequential value and benefit to the estate."  Assuming that the value of the property consisted solely of the equity created by the redemption payment,[1] debtor would have been entitled to relief under § 554(b) only if he, and not

---

[1] At the time of the Bankruptcy Court's decision, this assumption would not have been justified. At the hearing, the trustee indicated that he "has now obtained an offer for $145,000 and that . . . there may be additional offers in the amount of $160,000." R. 77-78. If the property had been worth $160,000, approximately $23,639 in equity would have remained after subtracting the balance on the first mortgage ($65,000) and the amount of the redemption payment ($71,360.99). If the property had been worth $145,000, $8,639 in equity would have remained. In either case, debtor's argument for abandonment failed – even assuming the redemption payment was not part of the bankruptcy estate – because the property, based on these figures, was not "of inconsequential value and benefit to the estate." In his brief on appeal, however, the trustee indicates that the property was sold in October 2014 and that the net proceeds amounted to $59,111.95. Appellee's Br. at 6-7. Therefore, but for the redemption payment, the Lamarra property would have had no value to the estate.

the bankruptcy estate, owned this equity. Debtor's argument on this point, in turn, relies on 11

U.S.C. § 348(f)(1), which states:

> [W]hen a case under chapter 13 of this title is converted to a case
> under another chapter under this title–
>
> (A) property of the estate in the converted case shall consist of
> property of the estate, as of the date of filing the petition, that remains
> in the possession of or is under the control of the debtor on the date
> of conversion;

As noted in the Bankruptcy Court's factual summary, debtor commenced this bankruptcy proceeding

(in September 2013) under Chapter 13, and he converted to Chapter 7 in March 2014. The

Bankruptcy Court acknowledged that payments made to a secured creditor pursuant to a confirmed

Chapter 13 plan are not included in the bankruptcy estate post-conversion, but it noted that in the

present case the redemption payment was not made pursuant to a confirmed Chapter 13 plan and,

further, that debtor did not mention the gift from Mr. Zora or his intent to use the gift to make such

a payment in the plan he filed on October 31, 2013. The Bankruptcy Court therefore concluded that

the Chapter 7 bankruptcy estate included the Lamarra property (because it was included in the estate

when the Chapter 13 petition was filed) and that the increase in equity caused by the redemption

payment is also part of the Chapter 7 estate because that payment was not made pursuant to a

Chapter 13 plan, either confirmed or unconfirmed.

The Court agrees that the Bankruptcy Court correctly analyzed this issue. The §

348(f)(1)(A) cases cited by the debtor all involved payments made to secured creditors pursuant to

a confirmed Chapter 13 plan. *See, e.g., In re Hodges*, 2013 WL 1755483 (Bankr. E.D. Tenn. Apr.

24, 2013); *In re Nichols*, 319 B.R. 854 (Bankr. S.D. Ohio 2004). No such plan ever existed in this

case. When the redemption payment was made, only an unconfirmed Chapter 13 plan had been filed

and the payment was not made pursuant thereto.  Further, the trustee cites extensive case authority

for the proposition that property included within the bankruptcy estate includes increases in value

to that property, whether due to appreciation, payments, or other circumstances.  *See, e.g., In re*

*Wegner*, 243 B.R. 731 (Bankr. D. Neb. 2000); *In re Potter*, 228 B.R. 422 (B.A.P. 8th Cir. 1999); *In*

*re Paolella*, 85 B.R. 974 (Bankr. E.D. Pa. 1988).  The redemption payment is therefore part of the

Chapter 7 bankruptcy estate, and the Bankruptcy Court correctly denied debtor's motion to compel

the trustee to abandon property.

Debtor also challenges the Bankruptcy Court's denial of his "motion to allow

administrative expense pursuant to § 503(b) payable to debtor for redemption of property nunc pro

tunc to date of redemption."  Debtor filed this motion for "the event that the Court should rule

against the Debtor on his Motion to Abandon."  Debtor's Mot. ¶ 14.

This motion sought relief under 11 U.S.C. § 503(b), which states that "there shall be

allowed administrative expenses, . . . including (1)(A) the actual, necessary costs and expenses of

preserving the estate . . . ."[2]  Debtor argued that the redemption payment qualified as an

administrative expense under *In re Sunarhauserman, Inc.*, 126 F.3d 811, 816 (6th Cir. 1997), where

the court noted "the well-accepted 'benefit to the estate' test, which states that a debt qualifies as

an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the

---

[2] The subsections of § 503(b) list various types of expenses which may qualify as
allowable administrative expenses, including wages, salaries, commissions, and benefits; certain
taxes, tax fines, tax penalties, and reductions in tax credits; certain compensation and
reimbursements; certain expenses incurred by creditors, custodians, and creditors' committees;
professional services rendered by attorneys, accountants, and indenture trustees; certain mileage
expenses; certain lease payments; various expenses related to the closing of a health care
business; and the value of certain goods received by the debtor prior to filing its bankruptcy
petition.

bankruptcy estate and (2) directly and substantially benefitted the estate."

> The Bankruptcy Court correctly denied this motion for the following reasons:

> In this case, the debtor, Mr. Kakos, does not have a right to payment, does not have a claim. That alone disqualifies his request for an administrative expense claim. . . . [Further,] the debtor's application runs into trouble on . . . the very first element of the two-part test, and that is that the claim arose from a transaction with the bankruptcy estate. This is the anomalous situation where a debtor entered into a transaction with the debtor and argues that that's the basis for the administrative expense claim. Mr. Kakos, as the individual in the Chapter 13 case, was the estate representative. Basically his administrative expense claim is predicated on the notion that he entered into a transaction with himself by making a gift to benefit property that he owned as the estate representative. Administrative expense claims are awarded to nondebtor parties that have claims, rights to payment from an estate provided they can show that the right to payment arose from a transaction that that nondebtor party had with the bankruptcy estate which directly and substantially benefitted the estate.
> . . . [I]n this case, Mr. Kakos does not hold an administrative expense claim against this estate for the gift that was made by Mr. Zora to him that was accomplished by the payment of the redemption price.

R. 83-85. At oral argument on this motion, the debtor conceded that he could not cite "even one case where the debtor in a Chapter 13 has successfully been awarded and paid an administrative expense claim." R. 38.

In addition to the reasons stated by the Bankruptcy Court, which this Court adopts, debtor's application was correctly denied because Mr. Zora's payment of the redemption price simply was not a "necessary" expense, but rather a gift. Nor was this payment "administrative," i.e., necessary to preserve the estate in any conceivable way. Nor was the payment a "transaction with the bankruptcy estate," but rather a gift to the debtor that enhanced the value of the estate. Finally, as the trustee notes, debtor has no standing to make a request for payment of the redemption price

as an administrative expense because he did not make this payment; rather, Mr. Zora did.

For these reasons, the Court AFFIRMS the orders of the Bankruptcy Court denying plaintiff's motions to (1) compel the trustee to abandon certain real property and (2) allow administrative expense for redemption of property.

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  September 4, 2015
        Detroit, Michigan